UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES NATHANIEL WATTS,<br><br>    Defendant. | Case No. 14-cr-40063-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant James Nathaniel Watts' second motion to compel discovery (Doc. 154). The Government has responded to the motion (Doc. 192), and Watts has replied to that response (Doc. 205). The Court addresses each of Watts' discovery requests in turn.

**I.    Unredacted Discovery**

Watts reiterates his request in his first motion to compel discovery that the Government produce discovery in an unredacted format so that counsel can efficiently access and use that discovery. They note that review of unredacted discovery in the United States Attorney's office is inconvenient and prevents frank discussion among the defense team members during the discovery review. They also argue that the Government's offer to provide unredacted discovery in the courtroom for the defendant's use at trial would impermissibly suggest to the jury the defense team is untrustworthy.

The Government notes, as it did in connection with Watts' first motion to compel discovery, that the redacted information is personal information about the victims, witnesses and minors that the defense team is free to examine at the Government's office. Apparently, they had not made any request to do so at the time the response was filed. The Government urges the Court

to rule consistently with its earlier order that the Government has done all it is required to do in this regard.

In reply, Watts argues that examination of the redacted information at the Government's office is unworkable (1) because some of the information is not at the Government's office in Benton, Illinois, and must be obtained by traveling to the Federal Bureau of Investigations' office in Marion, Illinois, where the review cannot be conducted in private and (2) because the defense team cannot freely review and discuss the discovery at the Government's office.

The Court has already considered and ruled on this issue in connection with Watts' prior motion to compel discovery (Doc. 76). He has provided no compelling reason to reconsider that ruling at this time. This portion of the defendant's motion is **DENIED**.

## II.     Electronic Discovery

Watts also reiterates his argument from his original motion to compel that the watermarks and case identification stamps imprinted on the discovery by the Government prevent them from being usable in defense counsel's case management software. He again asks the Government to provide the password necessary to access the documents without the additional marks that interfere with their use by the defense software. Providing the password would be simple and would be more cost-effective for the defense team.

The Government responds that the Court has already ruled on this request, and there are no changed circumstances that warrant reconsideration of that order.

The Court has already considered and ruled on this issue in connection with Watts' prior motion to compel discovery (Doc. 76). He has provided no compelling reason to reconsider that ruling at this time. This portion of the defendant's motion is **DENIED**.

### III. DNA Evidence

Watts asks the Court to require the Government to produce background material for DNA testing analysis as required by Illinois law, Ill. S. Ct. Rule 417, and as requested by defense counsel as a condition of agreeing to DNA testing. The Government responds that, although it is not bound by Illinois court rules, it will provide discovery from the Illinois State Police crime lab regarding DNA testing as promised to the defense team. In reply, Watts reiterates that it wants the Government produce the requested material forthwith.

Because the Government agrees that it will produce the material Watts requests, this portion of the defendant's motion is **DENIED as moot**.

### IV. General Information

Watts also requests disclosure of several other specific categories of items. As a preliminary matter, as noted in its November 19, 2014, order on Watts' earlier discovery motion, there is no general constitutional right to discovery in any criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *see Gray v. Netherland*, 518 U.S. 152, 168 (1996). However, Rule 16 of the Federal Rules of Criminal Procedure and constitutional due process regarding exculpatory material allow criminal defendants limited access to information regarding the Government's case. *See Brady*, 373 U.S. at 87, *Giglio v. United States*, 405 U.S. 150, 155 (1972). The Government has responded that it is aware of its discovery obligations under Federal Rule of Criminal Procedure 16, the Jencks Act, 18 U.S.C. § 3500, and *Brady/Giglio*, and is complying – and will continue to comply – with those obligations.

Watts' motion is flawed in that it fails to contain the statement, required by the Court's June 10, 2014, discovery order (Doc. 22), that the defense team has conferred with the Government in an attempt to resolve the dispute without the involvement of the Court, including

3

the date of the conference and names of the attorneys involved, and that agreement could not be reached concerning the discovery dispute.   Without such efforts outside the Court, the Court risks being drawn in to "disputes" that do not really exist.

Even if the defendant had met all of the technical requirements, the Court would deny this part of the motion for the following reasons.   The Court has set deadlines for disclosure of expert witnesses and summaries of their testimony, so that portion of Watts' request is moot.   To the extent that the defendant requests non-expert material required to be produced pursuant to Rule 16, the requests are moot in the absence of an indication that the government is not complying with that rule; the specific delinquencies alleged by Watts are addressed below.   To the extent that the defendant requests material required to be produced by *Brady* or *Giglio*, the government has acknowledged its continuing obligations under those cases.   It has been repeatedly held that where the government has made assurances it will comply with *Giglio* and *Brady*, those assurances are sufficient.   *See Strickler v. Greene*, 527 U.S. 263, 283 n. 23 (1999); *see, e.g.*, *United States v. Alex*, 791 F. Supp. 723, 729 (N.D. Ill. 1992).   To the extent that the defendant requests information beyond that required to be produced under Rule 16, *Brady* or *Giglio*, the request is overbroad and would be denied.   The Court further notes that to the extent Watts requests information subject to production under the Jencks Act, the Court has no authority to order production of that information prior to the witness's testimony.   *See United States v. Napue*, 834 F.2d 1311, 1317 (7th Cir. 1987).

In his reply brief, Watts specifically points to the Government's lack of production of (1) original notes and memoranda of investigative agents and (2) post-indictment monitoring, eavesdropping or overhearing of Watts' conversations.

      A.     <u>Notes and Memoranda</u>

Watts is not entitled to the rough notes or memoranda he seeks from the Government at this time. As a general rule, notes and memoranda prepared by Government agents are not discoverable under Rule 16 so long as the Government turns over a written report that contains all the information found in the notes or memoranda. *United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997); *see United States v. Coe*, 220 F.3d 573, 582 (7th Cir. 2000). Rule 16(a)(2) expressly exempts from disclosure "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Furthermore, Rule 16(a)(2) does not authorize the discovery or inspection of statements made by Government witnesses or prospective Government witnesses except as provided in the Jencks Act, 18 U.S.C. § 3500.

Nothing in the Jencks Act requires the Government to preserve notes made in the course of an investigation after the notes have served their purpose in the preparation of interview reports. *United States v. Harris*, 542 F.2d 1283, 1292 (7th Cir. 1976). Where there is no bad faith on the part of the Government and no prejudice to the defendant, the Jencks Act permits destruction of interview notes which have been incorporated into a formal report. *Id.* The defendant has made no allegations of bad faith at this point. However, the government could not destroy currently existing notes without raising the issue of bad faith.

Under the Jencks Act a defendant is entitled to "a written statement made by [a Government] witness and signed or otherwise adopted by him." 18 U.S.C. § 3500(e)(1). An agent's notes are discoverable under the Jencks Act only where the notes relate to the subject matter of a witness's testimony, *United States v. Lopez*, 6 F.3d 1281, 1288 (7th Cir. 1993), and were "substantially a verbatim transcript of the [witness's] remarks, or were his own written

statement adopted and approved by him." *United States v. Starnes*, 644 F.2d 673, 681 (7th Cir. 1981); *see United States v. Morrison*, 946 F.2d 484, (7th Cir. 1991) (" If [rough] notes were substantially verbatim recitals of [the witness's] statements, then the government was obligated to turn them over," pursuant to the Jencks Act).   However, district courts have no authority to order pretrial disclosure of material embraced by the Jencks Act.   *See Napue*, 834 F.2d at 1317.

For these reasons, the Court will not order production of the preserved notes outside the parameters of the Jencks Act, but will order the Government to preserve all relevant agents' notes, and upon the requisite showing by the defendant, to make them available for discovery pursuant to the Jencks Act.   The Court cautions the Government that if any material information contained in the rough notes is not also contained in the reports provided to the defendant in advance of trial, the Court will closely examine whether the failure to disclose the notes impacted on the fairness of the trial.

B.   Surveillance

Defense counsel states that they have not been informed of any post-indictment surveillance of Watts.   In *Alderman v. United States*, 394 U.S. 165, 182 (1969), the Supreme Court held that, under the Fourth Amendment, the government must provide a defendant with all surveillance records as to which he has standing to object.   Thus, under *Alderman*, Watts is entitled to disclosure of all electronic surveillance of his own conversations.   *Id.* at 184. However, "[n]one of this means that any defendant will have an unlimited license to rummage in the files of the Department of Justice." *Id.* at 185.   Rather, "[i]t must be remembered that disclosure will be limited to the transcripts of a defendant's own conversations. . . ." *Id.* at 184.

The Government's response acknowledging its obligation to disclose written or recorded statements of Watts pursuant to Rule 16 satisfies the Court at this time that the required disclosures

have been or will be made.

For these reasons, the portion of the defendant's motion requesting general discovery is **DENIED**.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** Watts' Second Motion to Compel Discovery (Doc. 154).

**IT IS SO ORDERED.**
**DATED:   February 24, 2016**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
