IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMES NATHANIEL WATTS,

    Defendant.

Case No. 14-cr-40063-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant James Nathaniel Watts's motion to have his jury selected from the county of the alleged offense (Alexander County, Illinois) and to prevent the transformation of the racial demographics of the venire (Doc. 363). In his motion, Watts argues that 18 U.S.C. § 3235 requires that the jury in this capital case be selected exclusively from Alexander County. The Government has responded to the motion (Doc. 387).

**I.**    **Background**

Watts has been charged in this case in a two-count Indictment (Doc. 15). Count 1 charges Watts with the May 15, 2014, attempted armed bank robbery of the First National Bank in Cairo, Illinois, in violation of 18 U.S.C. § 2113(a), (d) and (e). The indictment further alleges that in attempting to rob the bank Watts used dangerous weapons to assault or put in jeopardy the life of another person and, in fact, killed Anita Grace and Nita Smith. Count 2 charges Watts with possessing a firearm as a felon.

Because the indictment alleges that death resulted from the attempted bank robbery, the possible penalty should Watts be convicted of Count 1 is death or life imprisonment. *See* 18 U.S.C. § 2113(e). The Government seeks the death penalty under the Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591-98, and accordingly, pursuant to § 3593(a), has filed a Notice of Intent

to Seek the Death Penalty (Doc. 92).

The offenses charged in the Indictment were alleged to have occurred in Alexander County, which is within the Southern District of Illinois.   The trial is scheduled to take place at the federal courthouse in Benton, Illinois.   Pursuant to the Court's Plan for the Random Selection of Jurors ("Jury Plan"), the Court must select jurors for all cases tried in Benton from twenty-seven counties – including Alexander County – within the Southern District.   The Jury Plan designates these counties as the Benton Division.   The Benton courthouse is the only operational courthouse within the Benton Division.

**II.    Analysis**

    A.    <u>Relevant Constitutional and Statutory Provisions</u>

Both the Constitution and the laws of the United States have provisions relating to location of the trial of, or selection of jurors in, criminal cases.   Provisions requiring that jurors be selected from areas in relation to the site of the charged offense are often referred to as vicinage requirements.

The issue is first addressed in Article III of the Constitution, which provides that, generally, a defendant must be tried in the state of the offense:   "The Trial of All Crimes . . . shall be by Jury; and such Trial shall be held *in the State where the said Crimes shall have been committed*."   U.S. Const. art. III, § 2, cl. 3 (emphasis added).   The Sixth Amendment adds the requirement that the jurors be drawn from the predetermined judicial district where the offense was committed:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury *of the State and district wherein the crime shall have been committed*, which district shall have been previously ascertained by law. . . .

U.S. Const. amend. VI (emphasis added).   The principle that a defendant should be tried by the

community is one of the fundamental principles of our judicial system. Accordingly, the Supreme Court has read into the Sixth Amendment a guarantee that a jury will be composed of a fair cross-section of the community, *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975), and Congress has codified that requirement in the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1861 *et seq*.

The statute at the heart of Watts's motion further expresses a preference for holding a capital criminal trial in the county of the offense:

> **Venue in capital cases**
> The trial of offenses punishable with death shall be had *in the county where the offense was committed*, where that can be done without great inconvenience.

18 U.S.C. § 3235 (emphasis added). A prior version of this statute was included in the Judiciary Act of 1789 and additionally provided that where the trial could not be held in the county where the offense was committed without great inconvenience, "twelve petit jurors at least shall be summoned from thence." Judiciary Act, ch. XX, § 29, 1 Stat. 73, 88 (1789), *available at* http://www.fjc.gov/history/home.nsf/page/landmark_02_txt.html. The original provision of the Judiciary Act of 1789 calling for jurors to be selected from the county of the offense was repealed in 1862. *Zicarelli v. Gray*, 543 F.2d 466, 478 n. 60 (3d Cir. 1976) (citing Act of July 16, 1862, ch. 189, § 2, Pub. L. No. 37-160, 12 Stat. 589); *United States v. Parker*, 19 F. Supp. 450, 459 (D.N.J. 1937) (noting that in 1862 Congress realized the difficulty of obtaining an impartial jury where all jurors are selected from the county of the offense).

B. <u>Parties' Positions</u>

Watts argues that because the "trial" of a capital case includes the empanelment of a jury and because "venue" (as appears in the title of the statute) has historically been understood as the

location from which a jury is selected, § 3235 requires the jury be selected from the county where the offense occurred unless greatly inconvenient. He argues that this interpretation of § 3235 ensures that the jury's decision reflects the conscience of the unique community effected by the offense. He also notes that the racial make-up of the population[1] in the Benton Division (5% African-American) is markedly different than that of Alexander County (32.7% African-American). Watts, who is African-American, argues this disparity impermissibly dilutes African-Americans' representation in the jury venire, and he asks the Court to remedy this disparity by selecting only jurors from Alexander County despite the fact that it would be in contravention of the Jury Plan.

The Government argues that the plain language of § 3532 neither requires nor supports selecting jurors exclusively from the county of the offense, and that the history of the law refutes that Congress intended such a result. The Government also counters Watts's suggestion – he does not overtly argue this – that the failure to limit the jury venire to Alexander County violates his Sixth Amendment and JSSA rights to a jury composed of a fair cross-section of the community, reiterating and incorporating the constitutional arguments it made in response to other motions filed by Watts challenging the constitutionality of the selection of his jury.

C. <u>Application</u>

The Court first notes that, as Watts has admitted, every court to consider his statutory argument has rejected it. The Court does likewise for many of the same reasons set forth in *United States v. Ciancia*, No. 2:13-cr-902-PSG (C.D. Cal. Sept. 3, 2015), attached to the Government's response to Watts's motion, and in *United States v. Savage*, No. 07-550-03, 2012 WL 4616099 (E.D. Pa. Oct. 2, 2012).

---

[1] Population data was taken from the 2010 United States Census.

First, the plain language of § 3235 does not require that jurors be selected from the county of the offense, only that the *trial* be held there if not greatly inconvenient.[2] In the absence of any persuasive authority or compelling reason, the Court will not construe the word "trial" or "venue" so broadly as to include the procedures used to draw the venire for Watts's case. This Court agrees with the *Savage* court:

> Section 3235 is unambiguous. There is nothing in § 3235 that requires the jury to be selected from the county of the offense. We reject Defendant's attempt to import a "vicinage requirement" into the statute. Defendant invites us to construe the terms "venue" and "trial" in 18 U.S.C. § 3235 as encompassing a requirement that the empaneled jury must be citizens of the county of the offense. Such a constrained interpretation finds no support in the law. The statute requires only that the trial of a capital defendant be held in the county where the offense was committed. It says nothing with respect to the location from which jurors will be selected.

*Savage*, 2012 WL 4616099, at *2.

Second, the Court does not believe Congress intended for capital case jurors to be selected exclusively from the county of the offense. It originally had this intent in 1789 when it passed the Judiciary Act of 1789, but after realizing the difficulty obtaining impartial jurors from the immediate vicinity of the crime, it eliminated the requirement in 1862 and has not reenacted it since then. There is simply no support for the proposition that Congress intended in enacting § 3235 for jurors in capital cases to all come from the county of the offense.

With respect to Watts's suggested Sixth Amendment argument, he has not argued that the selection of jurors is unconstitutional because the jurors do not come from "the State and district wherein the crime shall have been committed, which district shall have been previously

---

[2] The Court notes that Watts does not ask that his trial actually be held in Alexander County, only that the jury be selected from Alexander County. A trial in Alexander County would, without question, be greatly inconvenient in light of the fact that there is no operational federal courthouse in that county. *See Hayes v. United States*, 296 F.2d 657, 667 (8th Cir. 1961) (court not required to try case in county where it has no facilities or to borrow facilities for a trial in the county of the offense).

5

ascertained by law. . . ." U.S. Const. amend. VI. Indeed, they will if the Court proceeds as planned to select jurors randomly from the Benton Division of the Southern District of Illinois.[3] "[N]either the language of the vicinage provision [of the Sixth Amendment] nor its legislative history suggests that the geographical area from which the jury is summoned must be smaller than the judicial district created by Congress." *United States v. Grisham*, 63 F.3d 1074, 1080 (11th Cir. 1995); *see United States v. Ashley*, 54 F.3d 311, 315 (7th Cir. 1995) (finding "no constitutional mandate that requires federal courts to draw jurors from any more narrowly defined geographic area than that provided in the" Southern District of Illinois Jury Plan); *Zicarelli v. Gray*, 543 F.2d 466, 482 (3d Cir. 1976) ("The petit jury was drawn from both the state and the federal judicial district within which the crimes occurred, and the state-and-district guarantee of the Constitution promises no more.").

Furthermore, in his motion Watts has not even attempted to show two of the three essential elements to make a prima facie case of a fair cross-section violation:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). Watts's statistical evidence compares only the demographics of Alexander County as compared to the Benton Division, not the demographics of the Benton Division as compared to the jury venire, the relevant inquiry for a fair cross-section challenge. And nowhere in his motion does he ever even mention systematic exclusion. Watts has not articulated any other recognizable Sixth Amendment claim in the pending motion. For

---

[3] The Southern District of Illinois was "previously ascertained by law" in 1978 by the Federal District Court Organization Act of 1978, Pub. L. No. 95-408, § 4, 92 Stat. 883, 884 (codified in relevant part at 28 U.S.C. § 93(c)).

these reasons, the Court rejects any constitutional challenge that might be advanced in this motion without prejudice to the arguments raised in Watts's other motions challenging the constitutionality of jury selection (Docs. 153 & 362).

### III.     Conclusion

For the foregoing reasons, the Court **DENIES** Watts's motion to have his jury selected exclusively from Alexander County and to prevent the transformation of the racial demographics of the venire (Doc. 363).

**IT IS SO ORDERED.**
**DATED:   November 21, 2016**

                                       s/ J. Phil Gilbert
                                       **J. Phil Gilbert**
                                       **United States District Judge**