UNITED STATES DISTRICT COURT
for the
Southern District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JAMES NATHANIEL WATTS,<br><br>    Defendant. | Case Number:  14-cr-40063-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Government's motion to amend the Third Amended Scheduling Order to add certain deadlines for actions to be taken in connection with Federal Rule of Criminal Procedure 12.2 (Doc. 448).  Defendant James Nathaniel Watts has responded to the motion, objecting that the proposed deadlines and actions are in contravention of Rule 12.2 (Doc. 459).  The Government has replied to that response (Doc. 463).

**I.      Relevant Rules**

The Court starts with the relevant portions of Rule 12.2 that deal with expert evidence of a mental condition in a capital sentencing proceeding:

> **Notice of an Insanity Defense; Mental Examination**
> * * *
> **(b) Notice of Expert Evidence of a Mental Condition.**  If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . (2) the issue of punishment in a capital case, the defendant must – within the time provided for filing a pretrial motion or at any later time the court sets – notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.  The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

>    **(c) Mental Examination.**
>       **(1) Authority to Order an Examination; Procedures.**
>          * * *
>          **(B)** . . . .  If the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court.
>       **(2) Disclosing Results and Reports of Capital Sentencing Examination.**  The results and reports of any examination conducted solely under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2) must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition.
>       **(3) Disclosing Results and Reports of the Defendant's Expert Examination.**  After disclosure under Rule 12.2(c)(2) of the results and reports of the government's examination, the defendant must disclose to the government the results and reports of any examination on mental condition conducted by the defendant's expert about which the defendant intends to introduce expert evidence.

This rule sets forth a specific sequence of activities:  (1) the defendant's notice, (2) the Government expert's examination and (3) the sealing of the results.  If the defendant is convicted and confirms the intent in his notice, (4) disclosure of the Government expert's results and reports, and then (5) disclosure of the defense expert's examination results and reports follow.[1]  The sequence set forth by Rule 12.2 allows the Government to conduct the mental health examinations it needs to rebut the defendant's mental condition mitigation evidence before the guilt phase of the trial begins to avoid unnecessarily delaying the penalty phase of the trial to conduct such an examination.  *See* Fed. R. Crim. P. 12.2 advisory committee's note to 2002 amendments.  Sealing of the Government expert's examination results and reports until a capital defendant is convicted and confirms he will place aspects of his mental condition in issue at sentencing protects the defendant's Fifth Amendment right against self-incrimination by ensuring the Government cannot know about, and therefore cannot make derivative use of in the

---

[1] The Court acknowledges that this sequence is conditioned and qualified by other terms of the rule that are not contained in this summary.

guilt phase of the trial, the defendant's compelled statements. *See id.*

Federal Rule of Criminal Procedure 16(b)(1) also speaks to a defendant's duty to disclose information about mental condition experts it intends to use in a capital sentencing proceeding:

> **(C) Expert witnesses. –** The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if–
> * * *
> **(ii)** the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.
>
> This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

## II.      Parties' Positions

In the pending motion, the Government asks the Court to alter or supplement the activities set forth in Rule 12.2 to ensure it receives what it believes it is entitled to under Rule 16(b)(1)(C) while still accomplishing the goals of Rule 12.2.[2] The Government asks that the Court require Watts's Rule 12.2 notice to include the names and types of professions of his experts and the specific tests they have administered or will administer in their examination of Watts. It also asks the Court to allow it to name an unrelated Government prosecutor as "firewall" counsel. Firewall counsel would receive disclosure from Watts under Rule 16(b)(1)(C) of the results and reports of Watts's mental condition experts within 30 days of Watts's Rule 12.2 notice. Firewall counsel would also represent the Government on issues that may arise in the course of the examination process. The Government proposes that firewall counsel be completely insulated from the prosecution team beginning when Watts discloses his experts' results and reports and continuing until such time as Watts is found guilty and confirms

---

[2] The Government correctly notes, and Watts does not dispute, that the Third Amended Scheduling Order incorrectly requires the Government to give notice of its expert evidence on mental condition at the same time it requires Watts to give his Rule 12.2 notice, on January 4, 2017. The notice deadline should only apply to Watts.

he will offer expert mental condition evidence at sentencing.

Watts objects to the Government's proposed plan, noting it has cited no case in which a court has allowed use of a firewall counsel as proposed by the Government without the agreement of the defendant. Watts emphasizes that the Government's mental condition evidence gained in a court-ordered evaluation can only be used in rebuttal of his mental condition mitigation evidence, not as affirmative evidence to support imposition of the death penalty. He argues that Rule 12.2's sequencing of events with respect to acquiring and using this rebuttal evidence appropriately balances the concerns involved. Deviation from that plan, Watts argues, would give the Government an unfair advantage in preparing its rebuttal case by allowing it earlier access to Watts's expert mental condition evidence than Rule 12.2 intends. He therefore urges the Court not to depart from the strict sequence set forth in that rule. He further argues that firewall counsel is not necessary and could expand the issues that would need to be litigated if any firewall is breached. Watts does not address Rule 16(b)(1)(C) in conjunction with Rule 12.2.

**III. Analysis**

At the core of this dispute are the apparently conflicting commands of Rule 12.2, which provides a capital defendant's mental condition experts' reports and results he intends to use at a penalty phase[3] may not be released to the defendant until after the guilt phase of the trial, and Rule 16(b)(1)(C), which provides that a defendant must provide certain information –testimony summaries, opinions, bases and reasons for the opinions and expert qualifications – about his expert witnesses "at the government's request." Both rules apply "in all criminal proceedings in the United States district courts," Fed. R. Crim. P. 1(a)(1), and capital sentencing proceedings are

---

[3] The Court refers throughout this order to the "penalty phase." Of course, a penalty phase will not be necessary if Watts is not found guilty of Count 1, the charge carrying the possibility of death as a penalty. By referring to the penalty phase, the Court expresses no opinion on whether Watts is guilty of Count 1 or on whether a penalty phase will be necessary.

not among the specific proceedings excluded from this broad scope, Fed. R. Crim. P. 1(a)(5).  A number of district courts have struggled to reconcile these rules in capital cases while still achieving their purposes, including *United States v. Wilson*, 493 F. Supp. 2d 348 (E.D.N.Y. 2006), which the Court finds persuasive.  *Wilson* took guidance from *United States v. Johnson,* 383 F. Supp. 2d 1145 (N.D. Iowa 2005); *United States v. Fell,* 372 F .Supp. 2d 753 (D. Vt. 2005); *United States v. Johnson,* 362 F. Supp. 2d 1043 (N.D. Iowa 2005); and *United States v. Sampson,* 335 F. Supp. 2d 166 (D. Mass. 2004).  *Wilson*, 493 F. Supp. 2d at 350-51.  This Court has also considered cases like *United States v. Taveras*, 233 F.R.D. 318, 322 (E.D.N.Y. 2006) (declining to appoint firewall counsel and delaying Government examination of defendant until after guilt phase because of danger of firewall breach and minimal delay caused by later examination), and *United States v. O'Reilly*, No. 05-80025, 2010 WL 653188 (E.D. Mich. Feb. 19, 2010) (declining to appoint firewall counsel when defendant withdrew consent), which do not change the Court's view of the persuasiveness of *Wilson*.

In *Wilson*, the Government requested that the defendant produce detailed information about his mental condition experts in its Rule 12.2(b)(2) initial notice, including his experts' names, areas of expertise and curriculum vitae; materials the experts relied on or about which they will testify, and all articles or studies the experts relied on in reaching their conclusions. *Wilson*, 493 F. Supp. 2d at 351.  The Government argued it needed such detailed information in order to prepare its rebuttal case, and that without it, the Rule 12.2 notice would not be meaningful.  *Id.*

After reviewing the *Sampson* and *Johnson* cases on similar issues, the *Wilson* court held that to require more than disclosure of (1) the kind of mental condition experts that the defendant intends to call during the penalty phase and (2) the nature of the testing those experts had

5

performed or would perform would contravene Rule 12.2, which provides that a defendant's mental condition experts' reports and results do not need to be disclosed to the Government, if at all, until after the guilt phase of the trial. *Id.* at 352. The court concluded that the two aforementioned items of information were sufficient to provide meaningful notice to the Government to enable it to begin to prepare a rebuttal case, even without knowing the nature of the defendant's alleged mental condition. *Id.* Moreover, the disclosure of these two items must be to the prosecution team, not merely a firewall attorney. *Id.* at 353.

*Wilson* also considered the defendant's disclosure obligations under Rule 16(b)(1)(C) in light of Rule 12.2. The Government in *Wilson* requested Rule 16(b)(1)(C) disclosure to firewall counsel (as soon as counsel was appointed), which under the rule would consist of summaries of the opinions of the defendant's mental condition experts and the bases and reasons for those opinions; the test results and reports of their examination of the defendant; and all the raw data obtained by the defendants' experts. *Id.* at 353. The defendant argued that Rule 16 does not apply to the penalty phase of a capital trial. *Id.*

The *Wilson* court agreed with the court in *United States v. Catalan-Roman,* 376 F. Supp. 2d 108 (D.P.R. 2005), that the 2002 amendments to the both Rules 12.2 and 16 did not indicate Rule 16 was inapplicable in capital sentencing proceedings. *Id.* at 354. It further found that Rule 16's reference to Federal Rules of Evidence 702, 703 and 705 did not preclude its application in the penalty phase of a capital trial even though the Federal Rules of Evidence are not used to prevent the admission of hearsay and other evidence; expert evidence at sentencing would still conform to Rules 702, 703 and 705. *Id.* at 354-55. The *Wilson* court concluded that Rule 16(b)(1)(C) applied to mental condition experts in the penalty phase of a capital trial and that such disclosures served to facilitate the truth-seeking process in capital sentencing proceedings

by eliminating unnecessary delay, avoiding surprise and ensuring an informed sentencing determination. *Id.* at 355-56 (citing *Catalan-Roman*, 376 F. Supp. 2d at 114). The court therefore ordered the defendant to make the requested Rule 16(b)(1)(C) disclosure to the firewall counsel. *Id.* at 356. However, it set the date for disclosure approximately 21 days before trial. It found this time frame appropriately balanced the Government's need to prepare its rebuttal case; the defendant's interest in not disclosing mental condition evidence until after he is found guilty and confirmed his intent to use such evidence at sentencing; the risk of a breakdown in the firewall that would endanger the defendant's constitutional rights; and the need to avoid delay between the guilt and penalty phases of the trial. *Id.* at 357.

This Court agrees with the *Wilson* court for the reasons it gave. Accordingly, the Court will grant in part and deny in part the Government's motion (Doc. 448) as follows:

With respect to the content of the defendant's Rule 12.2 disclosures, Watts's Rule 12.2(b)(2) written notice of intent to introduce mental condition expert evidence on the issue of punishment at the penalty phase of the trial must inform the Government of the <u>kind of mental condition experts</u> he anticipates calling at the penalty phase and the <u>specific nature of the tests</u> those experts have performed or may be expected to perform on him in the future. This notice shall be filed and given to the Government's prosecution team on or before January 4, 2017, and need not contain any additional information. The Court notes that the Government has already learned a lot about Watts's mental health background from the briefing in connection with Watts's motion to dismiss the notice of intent to seek the death penalty on the basis of intellectual disability. In combination with this information, the notice required by the Court is sufficiently meaningful to allow the Government to identify appropriate experts and formulate a plan for constructing a rebuttal case to use at sentencing.

If Watts provides Rule 12.2(b)(2) notice that he intends to introduce mental condition expert evidence on the issue of punishment at the penalty phase of the trial, the Court will require further disclosure of mental health condition expert information under Rule 16.  The Court agrees with the *Wilson* Court that Rule 16(b)(1)(C) calls for a defendant's disclosure of penalty phase expert mental condition evidence before completion of the guilt phase of the trial.  It further notes that, while Rule 12.2 provides that the defendant's experts' results and reports should not be disclosed to the Government until after the Government's experts' results and reports are disclosed to the defendant, the reference to the Government is reasonably construed to encompass only the prosecution team.  *See Sampson*, 335 F. Supp. 2d at 245 (finding it is "reasonable and consistent with the goals of the new Rule 12.2 to interpret 'any attorney for the government' to mean any attorney for the government in a particular prosecution except those attorneys representing the government's interests solely in connection with its experts' testing").  So long as the disclosure does not pose an intolerable risk of violating Watts's constitutional rights, the Court believes it is appropriate in order to facilitate a fair and efficient sentencing proceeding.

In order to avoid the intolerable risk of violating Watts's Fifth and Sixth Amendment rights while still allowing the Government to begin to prepare its mental condition penalty phase rebuttal case before the completion of the guilt phase, the Court will appoint a firewall counsel.  Firewall counsel will receive Watts's Rule 16(b)(1)(C) disclosures, manage the Government's expert examination of Watts, including communication with defense counsel or the Court, if necessary, and construction of its rebuttal case until such time as Rule 12.2(c)(2) allows the prosecuting attorneys access to Watts's experts' results and reports.  As a precautionary measure, the Court will require firewall counsel to be from outside the United States Attorney's Office for

the Southern District of Illinois and the Capital Case Section of the Department of Justice's Criminal Division, and to have had no prior contacts with this case or Watts. The Government shall have up to and including January 11, 2017, to move for appointment of a specific firewall counsel. The Court directs the Government to consult with Watts's counsel in an effort to agree on a mutually acceptable firewall counsel.[4] The Court will provide additional guidance to and restrictions on firewall counsel when it appoints him or her.

The Court further agrees with the *Wilson* court that disclosure of Rule 16(b)(1)(C) information, even to firewall counsel, far in advance of trial is premature. The *Wilson* court ordered disclosure approximately 21 days before the commencement of jury selection. *See Wilson*, 493 F. Supp. 2d at 357, and in *United States v. Montgomery*, No. 2:11-cr-20044-JPM-1 (W.D. Tenn. Mar. 27, 2014) (Doc. 463-2), the court ordered disclosure approximately 60 days before the beginning of trial (Doc. 463-2 at 27, 29). The Court finds disclosure of Rule 16(b)(1)(C) information in this case a month after Watts's Rule 12.2 disclosures, as proposed by the Government, is premature (especially in light of the fact that such a deadline would fall immediately on the heels of the *Atkins* hearing). The Court directs the parties to confer about a reasonable deadline for Watts's Rule 16(b)(1)(C) disclosures to firewall counsel along the lines of the deadlines in *Wilson* and *Montgomery* and to inform the Court on or before January 11, 2017, of that agreed deadline, along with an agreed deadline for the Government's motion for a mental condition evaluation.

---

[4] While the Court ordinarily would not solicit participation from the defense team in selecting a member of the Government's team, the Court believes it is appropriate to do so in this situation in light of the fact that firewall counsel will be privy to constitutionally protected information from Watts himself, which the defense team has a heightened interest in protecting from improper disclosure.

IV.     Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the Government's motion to amend the Third Amended Scheduling Order (Doc. 448).  By separate order the Court will enter the Fourth Amended Scheduling Order setting forth the deadlines established in this order as well as the remaining deadlines in this case.

**IT IS SO ORDERED.**
**DATED:  December 19, 2016**

                                      s/ J. Phil Gilbert
                                      **J. PHIL GILBERT**
                                      **DISTRICT JUDGE**