IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>JAMES NATHANIEL WATTS,<br><br>  Defendant. | Case No. 14-cr-40063-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant James Nathaniel Watts's motion to dismiss the Indictment due to the systematic exclusion of African-Americans from the grand jury venire and to the violation of the Jury Plan for the Southern District of Illinois (Doc. 153). In the motion, Watts concedes that he did not, at the time the motion was filed, have sufficient information regarding jury selection in this district to fully support his motion. The Government responded to the motion (Doc. 194) arguing that it is premature since Watts did not have sufficient information at the time to properly support his motion, and that even if it were not premature, it has no merit. Watts has replied to that response (Doc. 204) arguing that his motion was not premature but must have been filed when it was to comply with the scheduling order set by the Court. The parties agreed it would be helpful to set new deadlines for additional briefing on the motion.

In an order dated November 21, 2016 (Doc. 455), the Court noted that Watts was provided with jury selection disclosures from the Court pursuant to 28 U.S.C. § 1867(f) in late January 2016. Thus, Watts had ample time to review those disclosures and had sufficient information to support his challenge to the grand jury that indicted him. The Court therefore gave Watts until December 16, 2016, to file a supplement to his motion that would include all arguments he wished

to pursue in this motion. The Court reserved ruling on Watts's motion pending the supplemental briefing.

Watts did not file any supplement to his motion,[1] so the Court now considers it based solely on the originally filed motion and its subsequent briefing.

**I.      Background**

Watts has been charged in this case in a two-count Indictment (Doc. 15). Count 1 charges Watts with the May 15, 2014, attempted armed bank robbery of the First National Bank in Cairo, Illinois, in violation of 18 U.S.C. § 2113(a), (d) and (e). The Indictment further alleges that in attempting to rob the bank Watts used dangerous weapons to assault or put in jeopardy the life of another person and, in fact, killed Anita Grace and Nita Smith. Count 2 charges Watts with possessing a firearm as a felon. The offenses charged in the Indictment were alleged to have occurred in Alexander County, which is within the Southern District of Illinois. Watts's trial will take place at the federal courthouse in Benton, Illinois.

Because the indictment alleges that death resulted from the attempted bank robbery, the possible penalty should Watts be convicted of Count 1 is death or life imprisonment. *See* 18 U.S.C. § 2113(e). The Government seeks the death penalty under the Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591-98, and accordingly, pursuant to § 3593(a), has filed a Notice of Intent to Seek the Death Penalty (Doc. 92).

Watts's motion challenges the selection of the grand jury that returned the Indictment. That grand jury was selected pursuant to the Court's Plan for the Random Selection of Jurors

---

[1] The Court notes that Watts filed a motion on December 16, 2016, asking the Court to select the petit jury from the entire Southern District of Illinois (Doc. 467). The Court does not consider this a supplement to the original motion now under consideration because (1) it deals with the petit jury rather than the grand jury selection and (2) it takes a contrary position to that taken in the motion before the Court – that the jury should be selected exclusively from potential jurors within the Benton Division.

(Revised November 2011) ("2011 Jury Plan").  The grand jury selection process began when the 2013 Benton Master Jury Wheel was filled according to the 2011 Jury Plan.  Pursuant to the 2011 Jury Plan, individuals comprising the Benton Master Jury Wheel were randomly selected from general election voter registration lists and lists of licensed drivers eighteen years or older ("source lists") covering twenty-seven counties in the Southern District of Illinois (the "Benton Division"). 2011 Jury Plan at 2-4.  A number of randomly selected individuals from the 2013 Benton Master Jury Wheel completed juror qualification questionnaires.  2011 Jury Plan at 4-5.  From those deemed qualified – that is, not unqualified, exempt or excused on request – the grand jury venire was summoned and the grand jury panel was selected in August 2013.  2011 Jury Plan at 5-7.

**II.     Analysis**

In his motion to dismiss the Indictment, Watts argues that African-Americans are underrepresented in the pool of qualified jurors in the Southern District of Illinois and that, as a consequence, the grand jury that indicted him was not selected from a fair cross-section of the community.  He speculates that the disparity between percentage of African-Americans in the grand jury venire and the percentage of African-Americans living within the Southern District of Illinois, which he estimates at 5.87%, or African-Americans living within the Benton Division, which he estimates at 5.7%, may exceed 10%.  That is the threshold level necessary to establish a *prima facie* case of intentional discrimination.  He speculates that there may be other flaws with the selection of his grand jury but required disclosure of more information before fleshing out his arguments: (1) that the 2011 Jury Plan does not comply with the Voter Rights Act, 52 U.S.C. § 10301, (2) that the juror source lists are not sufficiently up to date, (3) that the grand jury may have been impermissibly selected from the entire district rather than the Benton Division as called

for in the 2011 Jury Plan, and (4) that the Court did not supplement voter lists with driver's license lists when selecting the 2013 Benton Master Jury Wheel.

In an order dated December 8, 2016 (Doc. 461), the Court set forth the relevant statutory and constitutional law regarding challenges to the requirement that a jury be selected from a fair cross-section of the community.   In that order, the Court noted that challenges brought under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.*, must be accompanied by "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title."   28 U.S.C. § 1867(c).   The motion denied in the December 8, 2016, order was not accompanied by the required sworn statement of facts, so the Court rejected the statutory challenge.   The pending motion is similarly deficient, so the Court rejects it as well to the extent it makes a statutory challenge.

In its December 8, 2016, order, the Court further noted the requirements to establish a *prima facie* case for a constitutional fair cross-section challenge as set forth in *Duren v. Missouri*, 439 U.S. 357, 364 (1979).   It found that Watts had failed to establish the second element – that the representation of African-Americans in the jury pool is not fair and reasonable in relation to the number of African-Americans in the community – because he did not point to an absolute disparity of greater than 10%.   It further rejected an alternate measure of assessing the disparity, the comparative disparity.   As for the pending motion, it would be impossible for there to be an absolute disparity of more than 10% because the percentage of the population that is African-American is only approximately 6% according to Watts's figures; the greatest absolute disparity possible is therefore approximately 6%.   That is insufficient to establish a *prima facie* case for a constitutional fair cross-section challenge.

The Court further found in its December 8, 2016, order that Watts had failed to make any showing of the third *Duren* element – systematic exclusion of African-Americans from the jury selection process.   Similarly, the arguments he makes in his pending motion in support of systematic exclusion are unsupported and speculative.

In sum, Watts's theories for why his grand jury venire did not represent a fair cross-section of the community or why the Court has not complied with the 2011 Jury Plan are insufficient or unsupported and therefore rejected.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Watts's motion to dismiss the Indictment due to the systematic exclusion of African-Americans from the grand jury venire and to the violation of the Jury Plan for the Southern District of Illinois (Doc. 153).

**IT IS SO ORDERED.**
**DATED:   January 19, 2017**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**