IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 14-cr-40063-JPG |
| JAMES NATHANIEL WATTS, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant James Nathaniel Watts's motion to strike the notice of intent to seek the death penalty on the grounds that he is intellectually disabled (Doc. 319). The Government has responded to the motion (Doc. 417).[1] One of the threshold issues to be decided in the motion relates to the burden of proof – who has it and how much evidence is required. The Court believes it would be helpful to establish the burden of proof before the hearing on the substance of the motion, currently scheduled for February 27, 2017.

**I.   Background**

Watts has been charged in this case in a two-count Indictment (Doc. 15). Count 1 charges Watts with the May 15, 2014, attempted armed bank robbery of the First National Bank in Cairo, Illinois, in violation of 18 U.S.C. § 2113(a), (d) and (e). The indictment further alleges that in attempting to rob the bank Watts used dangerous weapons to assault or put in jeopardy the life of another person and, in fact, killed Anita Grace and Nita Smith. Because the indictment alleges that death resulted from the attempted bank robbery, the possible penalty should Watts be convicted of Count 1 is death or life imprisonment. *See* 18 U.S.C. § 2113(e). The Government

---

[1] Neither subsequently filed brief (Docs. 450 & 494) addresses the issue addressed in this order – the burden of proving a defendant is intellectually disabled.

seeks the death penalty under the Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. §§ 3591-98, and accordingly, pursuant to § 3593(a), has filed a Notice of Intent to Seek the Death Penalty (Doc. 92).   Watts asks the Court to dismiss the Notice on the grounds that he is intellectually disabled ("ID," also an abbreviation for "intellectual disability").[2]   Therefore, he believes imposing the death penalty on him would constitute cruel and unusual punishment in violation of the Eighth Amendment as explained in *Atkins v. Virginia*, 536 U.S. 304 (2002), *Hall v. Florida*, 134 S. Ct. 1986 (2014), and the FDPA, 18 U.S.C. § 3596(c).   The Government argues Watts is not ID, and that the death penalty may be imposed on him without running afoul of the Eighth Amendment.   The parties disagree about who carries the burden of proving Watts is ID and by what quantum of proof.

**II.   Analysis**

Watts concedes that it is his burden to make an initial showing of "reasonable doubt" about ID before an evidentiary hearing is warranted.   *Brumfield v. Cain*, 135 S. Ct. 2269, 2276 (2015) (considering Louisiana's standard for holding evidentiary hearing and stating, "[W]e . . . presume that a rule according an evidentiary hearing only to those capital defendants who raise a 'reasonable doubt' as to their intellectual disability is consistent with our decision in *Atkins*."); *id.* at 2281 (noting the defendant needs "only to raise a 'reasonable doubt' as to his intellectual disability to be entitled to an evidentiary hearing").   He has carried that burden in his motion to strike the notice of intent to seek the death penalty on the grounds that he is ID (Doc. 319).

---

[2] The FDPA and many cases decided until recently refer to an intellectually disabled person as "mentally retarded."   More recent authorities use the phrase "intellectually disabled" instead to avoid derogatory connotations of the label "mentally retarded."   *See Hall v. Florida*, 134 S. Ct. 1986, 1990 (2014).   The Court will do likewise unless necessary to directly quote another authority.

Watts also concedes that he carries the initial burden at the hearing of establishing a *prima facie* case that he is ID. If Watts establishes such a *prima facie* case by presenting evidence at the hearing from which it is possible to conclude he is ID, the Court will consider whether, taking Watts's and the Government's evidence together, it has been established that Watts is ID.

The parties disagree over who has the ultimate burden to prove whether Watts is ID and the quantum of evidence required to satisfy that burden. Watts argues that once he has established a *prima facie* case by a preponderance of the evidence, the Government bears the burden of rebutting his *prima facie* case by clear and convincing evidence. On the other side, the Government argues that Watts carries the ultimate burden of proving he is ID by a preponderance of the evidence. Neither *Atkins* nor the FDPA provide any clear statement of who bears the burden on this issue or of what the appropriate standard of proof is.

Watts acknowledges that a number of district courts have accepted the Government's view, although it notes that in many of those cases, the defendant has not argued for a different burden. *See United States v. Hardy*, 762 F. Supp. 2d 849, 852 (E.D. La. 2010) (noting the defendant did not contest that it is his burden to prove ID by a preponderance of the evidence); *United States v. Davis*, 611 F. Supp. 2d 472, 474 (D. Md. 2009) (stating, "nor is the lack of mental retardation an element of a crime that the government must prove beyond a reasonable doubt in order to impose the death penalty" and requiring defendant to prove ID using the preponderance standard); *United States v. Sablan*, 461 F. Supp. 2d 1239, 1243 (D. Colo. 2006) (rejecting notion that defendant must prove ID by clear and convincing evidence and requiring him to prove ID by a preponderance of the evidence). Watts also notes that the Fourth Circuit Court of Appeals found a defendant waived his burden challenge but that, in any case, the defendant would bear the burden by a

preponderance of the evidence.   *United States v. Umaña*, 750 F.3d 320, 358-59 (4th Cir. 2014), *cert. denied,* 135 S. Ct. 2856 (2015) (holding mental retardation is an affirmative defense to execution, and "defendants may constitutionally be made to bear the burden of proof for affirmative defenses") (citing *Leland v. Oregon,* 343 U.S. 790, 799 (1952) (holding, in the context of a capital case, that States may require defendants to bear the burden of proving the defense of insanity beyond a reasonable doubt); *Patterson v. New York,* 432 U.S. 197, 210 (1977) (where state was required to prove elements of crime beyond a reasonable doubt, "[p]roof of the non-existence of all affirmative defenses has never been constitutionally required")); *see also Hooks v. Workman*, 689 F.3d 1148, 1166 (10th Cir. 2012) (*habeas* case noting that in the underlying criminal case it was defendant's burden to prove he was ID by a preponderance of the evidence).

Watts argues the Court should disregard these cases and instead apply the balancing test used in *Addington v. Texas*, 441 U.S. 418 (1979), regarding involuntary commitments to mental institutions, to require the Government to prove by clear and convincing evidence that Watts is not ID.   He also points to other circumstances where the burden has been placed on the Government to prove propositions by clear and convincing evidence.   *See Woodby v. INS*, 385 U.S. 276 (1966) (deportation); *Chaunt v. United States*, 364 U.S. 350 (1960) (naturalization revocation); *Santosky v. Kramer*, 455 U.S. 745, 754 (1982) (termination of parental rights).   Watts also notes that the FDPA places the burden on the Government to prove beyond a reasonable doubt factors making the defendant eligible for the death penalty ("gateway" factors), 18 U.S.C. § 3591(a), and aggravating factors tending to support imposition of the death penalty, 18 U.S.C. § 3592(c), and suggests this indicates an intention that the Government should bear the burden on all issues to be

4

decided before death can be imposed. Finally, Watts concludes that placing the burden on him to prove ID by a preponderance of the evidence creates an unacceptable risk of executing an ID individual, in violation of the Eighth Amendment. Watts cites no cases placing the burden of proving a defendant is not ID on the Government.

The Government, on the other hand, notes that the weight of federal authority places the burden on the defendant to prove ID by a preponderance of the evidence. *United States v. Salad*, 959 F. Supp. 2d 865, 868 (E.D. Va. 2013) ("[B]oth parties agree, and the vast majority of courts to address this issue have found, that the defendant bears the burden of proof on an *Atkins* claim by a preponderance of the evidence."); *United States v. Wilson*, 922 F. Supp. 2d 334, 343 (E.D.N.Y. 2013), *remanded on other grounds*, No. 04-CR-1016 (NGG), 2016 WL 1060245 (E.D.N.Y. Mar. 15, 2016) (same); *United States v. Candelario-Santana*, 916 F. Supp. 2d 191, 193 (D.P.R. 2013) ("Every district court that has addressed the issue that we are aware of has held the same.").

The Court finds that Watts should bear the burden of proving by a preponderance of the evidence that Watts is ID and therefore cannot receive the death penalty. Not only is this placement of the burden consistent with every case cited by the parties to have considered this question, albeit often without much controversy, it is not inconsistent with the standard of proof analysis in *Addington*.

In *Addington*, the Supreme Court considered "what standard of proof is required by the Fourteenth Amendment to the Constitution in a civil proceeding brought under state law to commit an individual involuntarily for an indefinite period to a state mental hospital." *Addington*, 441 U.S. at 419-20. The Supreme Court noted that the function of a standard of proof is "to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the

correctness of factual conclusions for a particular type of adjudication.'" *Id.* at 423 (quoting *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring)). "The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington*, 441 U.S. at 423. The Supreme Court noted that the appropriate standard of the three recognized standards – preponderance, beyond a reasonable doubt, and clear, unequivocal and convincing – is to be determined by looking at the individual's interest, the state's interest, and the consequences of an erroneous decision. *Id.* at 425. The interests at issue were (1) the individual's interest against a significant deprivation of his liberty and adverse social consequences that might flow from his commitment and (2) the state's interests in providing care for its citizens who are unable to care for themselves and in protecting the community from mentally ill people who are dangerous. *Id.* at 425-26. The Supreme Court ultimately decided that the preponderance standard was too low and would present an excessive risk of erroneous commitment, that the criminal law's beyond a reasonable doubt standard was too high and risks preventing people who needed institutional care from getting it, and that the appropriate standard was clear and convincing evidence. *Id.* at 426-33.

Because *Addington* addressed a different question from the one presented to this Court, it does not dictate the standard of proof in this case. *Addington* dealt with the state's civil commitment process, and this case involves an argument in the nature of an affirmative defense to a punishment that may follow a criminal conviction for which the Government must prove all elements beyond a reasonable doubt, *In re Winship*, 397 U.S. at 364, and for which the lack of ID is *not* an element. As the Fourth Circuit noted in *Umaña*, 750 F.3d at 358-59, there is nothing constitutionally impermissible about requiring a defendant to prove an affirmative defense. And

the burden of proving that affirmative defense suggested by the Government and approved by other courts is the preponderance burden, the lowest of the three different standards of proof.[3]

### III. Conclusion

The Court believes placing the burden on Watts to prove by a preponderance of the evidence that he is ID adequately reflects the degree of confidence society demands for an affirmative defense to the death penalty.

**IT IS SO ORDERED.**
**DATED: January 31, 2017**

                                                s/ J. Phil Gilbert
                                              **J. Phil Gilbert**
                                              **United States District Judge**

---

[3] In fact, disputes that have occurred about the burden are not so much about whether the Government or the defendant bears the burden of proof, but are about what standard the defendant must meet to establish he is ID. S*ee, e.g., Sablan*, 461 F. Supp. 2d at 1243 (rejecting clear and convincing evidence standard for a defendant's proof of ID in FDPA case); *Pruitt v. State,* 834 N.E.2d 90, 102-03 (Ind. 2005) (rejecting defendant's burden to prove ID by clear and convincing standard and substituting preponderance standard); *People v. Vasquez,* 84 P.3d 1019, 1023 (Colo. 2004) (upholding Colorado law requiring proof by the defendant by clear and convincing evidence); *Head v. Hill,* 587 S.E.2d 613, 622 (Ga. 2003) (upholding Georgia law requiring proof by the defendant beyond a reasonable doubt).