IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

JAMES NATHANIEL WATTS,

    Defendant.

Case No. 14-cr-40063-JPG

**MEMORANDUM AND ORDER**

    This matter comes before the Court on defendant James Nathaniel Watts's motion to secure the petit jury from the entire Southern District of Illinois rather than just the twenty-seven counties comprising the Benton Division (Doc. 467). The Government has responded to the motion (Doc. 475).

**I.    Background**

    Watts has been charged in a two-count Indictment (Doc. 15). Count 1 charges him with the May 15, 2014, attempted armed bank robbery of the First National Bank in Cairo, Illinois, in violation of 18 U.S.C. § 2113(a), (d) and (e). The indictment further alleges that in attempting to rob the bank Watts used dangerous weapons to assault or put in jeopardy the life of another person and, in fact, killed Anita Grace and Nita Smith. Count 2 charges Watts with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). Because the indictment alleges that death resulted from the attempted bank robbery, the possible penalty should Watts be convicted of Count 1 is death or life imprisonment. *See* 18 U.S.C. § 2113(e). The Government seeks the death penalty under the Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591-98, and accordingly, pursuant to § 3593(a), has filed a Notice of Intent to Seek the Death Penalty (Doc. 92).

    Watts's case is set to be tried in June 2017 at the courthouse in Benton, Illinois. The petit

jury selection process began with the Benton Master Jury Wheel that was filled in April 2015 according to the Court's Plan for the Random Selection of Jurors (Revised November 2011) ("2011 Jury Plan").  Under that plan, individuals comprising the Benton Master Jury Wheel were randomly selected from general election voter registration lists and lists of licensed drivers eighteen years or older ("source lists") covering twenty-seven counties in the Southern District of Illinois (the "Benton Division"; the remaining eleven counties comprise the "East St. Louis Division").  2011 Jury Plan at 2-4.  In April 2015, 9,685 individuals were randomly selected from those source lists to fill the 2015 Benton Master Jury Wheel.[1]  *See* Report on Operation of the Jury Selection Plan ("AO-12") for Benton Master Jury Wheel Filled 4/27/2015, pt. I (Doc. 362-2).

The petit jury selection process in Watts's case will continue according to the Plan for the Random Selection of Jurors (Revised September 2015) ("2015 Jury Plan").  Under that plan, juror qualification questionnaires have been or will be sent to randomly selected individuals drawn from the 2015 Benton Master Jury Wheel.  2015 Jury Plan at 4-5.  Based on an individual's responses in the questionnaire, he or she will either be deemed unqualified for service, exempt from service, excused from service upon request, or qualified.  2015 Jury Plan at 5-6.  Those deemed qualified will be placed in the Benton Qualified Jury Wheel for this case and may be sent a case-specific juror questionnaire and/or summoned to Court for voir dire and final jury selection.  2015 Jury Plan at 7.

## II. Parties' Positions

Watts asks the Court to qualify and eventually summon jurors from the entire Southern

---

[1] 10,082 individuals were originally randomly selected, but after removal of deceased individuals or individuals who had moved out of the district, 9,685 individuals remained.

District of Illinois, in proportion to the respective populations of the Benton and East St. Louis Divisions, rather than exclusively from the Benton Division as called for by the 2015 Jury Plan. He argues that although a petit jury is typically summoned from the division in which a defendant will be tried, nothing prevents the Court from drawing potential petit jurors from the district as a whole. Watts concedes that although drawing the petit jury exclusively from the division in which he will be tried is not unconstitutional, expansion of the geographic area would "greatly increase the chances of seating a fair and impartial jury," Mot. 1, and would avoid the appearance of partiality and exclusion, Mot. 4.

In support of his request, he cites cases in which the Court expanded the geographic area from which the jury was selected because of extensive pretrial publicity or knowledge of the defendant in the area from which the jury would ordinarily be selected. *See United States v. Blom*, 242 F.3d 799, 804 (8th Cir. 2001) (selecting jury from entire state except division where the crime was committed to avoid prejudice from publicity); *United States v. Erickson*, 75 F.3d 470, 476 (9th Cir. 1996) (drawing last-minute supplemental jurors from twenty-five mile radius of trial location for expediency). He asks the Court to exercise its discretion to widen the geographic area from which potential jurors are selected in light of the "substantial pretrial publicity" about this case.

Watts also points to the "deeply rooted and unique racial and social demographics, political histories, and beliefs regarding crime" in the divisions of this district. Mot. 4. Specifically, he points out that African-Americans make up 5.3% of the Benton Division population and 13% of the East St. Louis Division population. He further asserts (without explanation or citation to evidence) that the absolute disparity between African-Americans in the district's population and

those qualified for jury service in the Benton Division is 7.52%, and the comparative disparity is 76.7%.  He notes that at least one court has encouraged supplementation of voter lists to reduce the discrepancy between minorities in the population and minorities qualified as jurors.  *United States v. Levasseur*, 704 F. Supp. 1158, 1165 (D. Mass. 1989) (refusing to supplement Master Jury Wheel for case but endorsing expanding source lists going forward).

In response, the Government argues that the Court has already found Watts has not made a *prima facie* showing of systematic exclusion of African-Americans from the petit jury venire based on the Court's jury plans' drawing potential petit jurors exclusively from the 2015 Benton Master Jury Wheel.  It further argues the motion is untimely in light of the July 1, 2016, deadline for challenges to the manner of jury selection and is not a timely supplement to the motion challenging the grand jury for underrepresentation of African-Americans (Doc. 153).  The Government further argues that the motion has no merit, noting that the Supreme Court in *Ruthenberg v. United States*, 245 U.S. 480, 482 (1918), has found it constitutional to draw jurors exclusively from a division within a district rather than the entire district.

### III.    Analysis

As a preliminary matter, the Court would be justified in denying this motion because it was not timely filed.  In the Second Amended Scheduling Order (Doc. 365), the Court set a deadline of July 1, 2016, for the parties to file motions challenging jury selection procedures.  Watts's pending motion was filed December 16, 2016, more than five months late.  It is true the Court allowed Watts until December 16, 2016, to supplement his prior motion to dismiss the Indictment on the grounds that African-Americans were underrepresented in the pool of qualified jurors from which the grand jury was selected (Doc. 153).  However, the pending motion cannot be

reasonably construed as a supplement to that motion, which challenged the grand jury, not the petit jury, and which argued, contrary to the pending motion, that it would have been error to select the grand jury from the entire district rather than the Benton Division. Watts's pending motion is clearly late.

Even if Watts had filed the current motion in a timely manner, the Court would deny it. The Court has already acknowledged in prior orders a criminal defendant's rights respecting the jury that will hear his case. In its November 21, 2016, order (Doc. 454) denying Watts's request that the jury be selected exclusively from Alexander County, the county of the offense, the Court stated:

> Both the Constitution and the laws of the United States have provisions relating to location of the trial of, or selection of jurors in, criminal cases. Provisions requiring that jurors be selected from areas in relation to the site of the charged offense are often referred to as vicinage requirements.
> The issue is first addressed in Article III of the Constitution, which provides that, generally, a defendant must be tried in the state of the offense: "The Trial of All Crimes . . . shall be by Jury; and such Trial shall be held *in the State where the said Crimes shall have been committed*." U.S. Const. art. III, § 2, cl. 3 (emphasis added). The Sixth Amendment adds the requirement that the jurors be drawn from the predetermined judicial district where the offense was committed:
>
>> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury *of the State and district wherein the crime shall have been committed*, which district shall have been previously ascertained by law. . . .
>
> U.S. Const. amend. VI (emphasis added). The principle that a defendant should be tried by the community is one of the fundamental principles of our judicial system. Accordingly, the Supreme Court has read into the Sixth Amendment a guarantee that a jury will be composed of a fair cross-section of the community, *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975), and Congress has codified that requirement in the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1861 *et seq*.

The Court further explained the fair cross-section requirement in its order dated December 8, 2016 (Doc. 461):

Criminal defendants are entitled to be "tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010). "[T]he selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975). It is also guaranteed by the JSSA, which codifies "the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. There is no requirement, however, that a jury venire or the jury itself mirror the general population or have any particular composition, so long as the selection process is fair. *United States v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001).

\* \* \*

To make a *prima facie* of a constitutional fair cross-section violation, the defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

In its December 8, 2016, order (Doc. 461), the Court determined that Watts had failed to make a *prima facie* showing of a fair cross-section violation in connection with the selection of his petit jury venire exclusively from the Benton Division pursuant to the 2011 and 2015 Jury Plans. To the extent he makes the same challenge in this motion, he had said nothing to change the Court's conclusion that selection of the petit jury exclusively from the Benton Division does not violate Watts's right to a jury selected at random from a fair cross-section of the community.

Watts concedes as much in his motion, acknowledging that "[a] petit jury may be drawn constitutionally from only one division and not the whole district." *United States v. Herbert*, 698 F.2d 981, 984 (9th Cir. 1983) (citing *Ruthenberg v. United States*, 245 U.S. 480 (1918)); *see also*

*United States v. Ashley*, 54 F.3d 311, 315 (7th Cir. 1995) ("There is no constitutional mandate that requires federal courts to draw jurors from any more narrowly defined geographic area than that provided in the Plan for Random Selection of Jurors promulgated by the Southern District of Illinois and approved by the judicial council of this Circuit pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 *et seq.*")

Watts instead suggests that, although it is not required to by the Sixth Amendment or the JSSA, the Court should depart from the 2015 Jury Plan by qualifying petit jurors from the entire district to ensure Watts's due process right to a fair trial. Sometimes a fair trial may be threatened by extensive pretrial publicity about the crime or widespread knowledge about the defendant. While a defendant is not entitled to a jury totally ignorant of the facts of the case, he is entitled to a "panel of impartial, indifferent jurors." *Murphy v. Florida*, 421 U.S. 794, 799-800 (1975) (internal quotations omitted). Where extensive publicity creates "a trial atmosphere that ha[s] been utterly corrupted by press coverage," *id.* at 798, that deprives the defendant of his right to a fair trial by an impartial jury. *See Dobbert v. Florida*, 432 U.S. 282, 302-03 (1977) (declining to find due process violation in absence of such an atmosphere). When such risk is present, it may be acceptable to draw potential jurors from a larger geographic region to ensure a sufficient number of unbiased jurors. *See, e.g., United States v. Blom*, 242 F.3d 799, 804 (8th Cir. 2001) (selecting jury from entire state except division where the crime was committed to avoid prejudice from publicity).

Watts has not pointed to any evidence whatsoever of "a trial atmosphere that ha[s] been utterly corrupted by press coverage," *Murphy*, 421 U.S. at 798, such that he would be deprived of an impartial jury if it were selected exclusively from the Benton Division. Indeed, he has not

pointed to any specific item of potentially prejudicial media coverage within the Benton Division, much less extensive pretrial publicity that has "utterly corrupted" the jury pool. Additionally, the Court is taking precautions to ensure that there is a sufficient pool of potential jurors and sufficient voir dire to select an entire panel of impartial jurors. The Court anticipates approximately 300 to 325 potential jurors will be qualified, most or all of whom will be asked to complete a detailed 34-page questionnaire about their backgrounds before being summoned to the courthouse for group and individual voir dire. The Court is confident that this procedure is sufficient to ensure Watts will be tried by an impartial jury.

To the extent Watts argues that the unique nature and history of the population in the Benton Division will preclude selection of a fair and impartial jury, his assertion is pure speculation unsupported by any evidence. To the extent any individual prospective juror has particular beliefs about race, crime, politics or society that would render him or her unable to serve as an impartial juror, the Court is confident that any such information will be revealed during the jury selection process and that the individual will not be selected for the jury.

In sum, Watts has not presented any compelling reason to depart from the jury selection procedures set forth in the 2015 Jury Plan approved by the Judicial Council of the Seventh Circuit.

IV.  **Conclusion**

For the foregoing reasons, the Court **DENIES** Watts's motion to secure the petit jury from the entire Southern District of Illinois rather than just the twenty-seven counties comprising the Benton Division (Doc. 467).

**IT IS SO ORDERED.**
**DATED:   February 15, 2017**

                                                  s/ J. Phil Gilbert
                                                  **J. Phil Gilbert**
                                                  **United States District Judge**